

FILED
OCT - 1 2020
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
CAPE GIRARDEAU

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION ) <br> OF THE UNITED STATES OF AMERICA ) <br> FOR A WARRANT TO OBTAIN ) <br> LOCATION INFORMATION, INCLUDING ) <br> PRECISION LOCATION INFORMATION; ) <br> SUBSCRIBER AND TRANSACTIONAL ) <br> RECORDS; CELL SITE INFORMATION; ) <br> AND FOR A PEN REGISTER AND TRAP ) <br> AND TRACE DEVICES FOR PHONE ) <br> NUMBER 816-832-1837. ) | No. 1:20MJ4195 ACL <br><br> **FILED UNDER SEAL** |

## AFFIDAVIT

I, Michael Miller, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a warrant and order pursuant to Rule 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for information associated with a cellular telephone 816-832-1837 (hereinafter referred to as the "subject cellular telephone") to require Verizon Wireless (hereinafter "the Provider"), and/or any service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, to disclose to the United States location information, including precision location information, transactional and subscriber data and cell site location information, and the installation and use of other pen register and trap and trace devices associated with the subject cellular telephone, as described in Attachment B to the requested warrant and order.

2. I am a Deputy with the United States Marshals Service (USMS), and have been since May 2010. I am a graduate of the Federal Law Enforcement Training Center located in

1

Glynco, Georgia. Prior to my employment with the USMS, I worked for the Department of Homeland Security as an agent with the United States Border Patrol.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. The present affidavit is being submitted in connection with an application of the United States for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the location of the subject cellular telephone.

5. The USMS has probable cause to believe that the subject cellular telephone is being used by Brian L. Vice, who is currently a fugitive. Vice is presently on supervised release following his conviction for Possession and Utterance of Counterfeit Obligations and Securities, in violation of 18 U.S.C. § 472, in the United States District Court for the District of Kansas, in Case Number 2:15-CR20044 CM. On January 12, 2016, Vice was sentenced to serve 22 months in the Bureau of Prisons (BOP), followed by three years of supervised release. On December 19, 2017, jurisdiction was transferred to the Eastern District of Missouri and the case was assigned to United States District Judge Audrey Fleissig. (Designated Case No. 1:17-CR00112 AGF). On October 21, 2019, Judge Fleissig revoked Vice's term of supervised release after he was convicted in state court of the misdemeanor offense of Leaving the Scene of a Motor Vehicle Accident. Vice was sentenced to serve 4 months in BOP, followed by another 18 month term of supervised release.

This term of supervised release commenced on March 6, 2020. On July 22, 2020, Vice was arrested during a criminal investigation and he was charged with the felony offense of Possession of Methamphetamine in the Circuit Court of Stoddard County, Missouri, in Case Number 20SD-CR00704-01. Vice posted bond on August 12, 2020 and subsequently failed to appear for his arraignment. On August 24, 2020, Judge Fleissig issued a warrant for Vice's arrest for violating the terms of his supervised release. In addition to the federal warrant, Vice has an outstanding "no bond" warrant for his arrest in connection with the Stoddard County case. Vice remains a fugitive and his present whereabouts are unknown. During the course of our investigation, DEA TFO Austin Reed obtained information from a confidential source that Vice was known to use the telephone number 816-832-1837. On September 25, 2020, officers made contact with Vice's mother, identified as Cheryl Mallory, who confirmed she was receiving text messages from Vice from phone number 816-832-1837 as recently as September 24, 2020.

## BACKGROUND CONCERNING WIRELESS PROVIDERS

6. Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

   a. Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

  b. Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received. For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact. Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

  c. Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

  d. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular

device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

e. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

f. Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as precision location information or PLI data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

5

g.  In order to locate the subject cellular telephone and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the United States. The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Provider, any telecommunication service providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap and trace data.

Based on the facts as set forth herein, there is probable cause to believe that Vice has fled in order to avoid apprehension for his outstanding arrest warrants. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting Vice, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

## CONCLUSION

7.  Based on the above information, your affiant submits that there is probable cause to believe that the subject cellular telephone is currently being used by Vice, who is a fugitive at this time whose whereabouts are currently unknown. There is likewise probable cause to conclude that locating and monitoring the movements of the subject cellular telephone will lead to the location and arrest of Gamble.

8.  None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass.

Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only. Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

9. The monitoring of the location of the subject cellular telephone by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

10/01/2020
DATE

_Michael Miller_
Michael Miller
Deputy United States Marshal
United States Marshals Service

Sworn to and subscribed before me this \_\_\_\_1st\_\_\_\_ day of October, 2020.

_Abbie Crites-Leoni_
HONORABLE ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

7